**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY – CAMDEN VICINAGE**

|  |  |  |
|---|---|---|
| NORTHSTAR MARINE INC., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No: |
| | : | |
| CHERRY CREEK RECYCLING LLC, | : | |
| | : | In Admiralty // Rule 9 (h) |
| AND | : | |
| | : | |
| GEORGE & LYNCH, INC. | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT

The Plaintiff, Northstar Marine, Inc., by and through its attorneys, Reeves McEwing LLP, hereby brings the following Complaint against Defendants, Cherry Creek Recycling, LLC and George & Lynch, Inc., and in support thereof avers as follow:

### PARTIES

1.      Northstar is a New Jersey corporation with a principal place of business at 36 Clermont Drive, Clermont, New Jersey 08210.

2.      Defendant, Cherry Creek Recycling, LLC, is a Colorado limited liability company whose principle place of business is located at 7342 South Alton Way, Unit 7D, Centennial, Colorado, 80112.

3.      Defendant, George & Lynch, Inc. is a Delaware corporation with a principal place of business at 150 Lafferty Lane, Dover, Delaware 19901.

### JURISDICTION AND VENUE

4.      This is a case within the court's admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333 (1), and Rule 9 (h) of the Federal Rules of Civil Procedure, inasmuch as it involves and/or pertains to a maritime contract (contract for the bareboat charter of vessels).

5.      Alternatively, or additionally, jurisdiction exists under U.S.C. § 1332 given the diversity of the parties, and the amount in controversy exceeds $75,000.00.

6.      Venue is proper in this District because at all relevant times Defendant George & Lynch regularly conducted business within this District; the Bareboat Charter Agreement between Plaintiff and Defendant, Cherry Creek, was executed within this District, Defendant Cherry Creek sought out Plaintiff within this District and the Agreement provides for venue in this District to the exclusion of other courts.

<u>FACTUAL BACKGROUND</u>

7.      Northstar performs various maritime and environmental services, including the chartering of vessels and barges.

8.      George & Lynch, contracted with the State of Delaware to construct a new roadway and bridge spanning the Indian River Inlet in Delaware and to demolish the old Indian River Inlet Bridge.

9.      Cherry Creek and George & Lynch, entered into a subcontracting agreement whereby Cherry Creek would demolish the old Indian River Inlet Bridge.

10.     In order to complete their subcontract with George & Lynch, Cherry Creek required a stable waterborne platform to mobilize equipment to demolish the old Indian River Inlet Bridge.

11.     Cherry Creek sought out Northstar at their Clermont, New Jersey office to provide certain barges and other equipment, materials and services to create and mobilize such a platform to Indian River Inlet.

12.     On or about May 20, 2013, Northstar and Cherry Creek entered into a Bareboat Charter Agreement wherein, Northstar agreed to provide enough Shugart barges to construct a 120' x 50' barge with anchors, anchor winches and power pack. *See* Exhibit "A".

13.     The agreed rate of hire for the barges was $29,400.00 per month.

14.     The terms of the written Agreement include the following language:

a)     The barges are delivered to Charterer in an "as is" condition and Northstar makes no representation, or warranty, express or implied, as to the condition or seaworthiness of the barges at the time of delivery.

b)     Charterer's acceptance of the barges shall constitute conclusive proof of the fitness of the barges for Charterer's intended use and Charterer's continued use shall be conclusive proof of the barges continued seaworthiness.

c)     Delivery to and use by Charterer, which may include any actions taken by Charterer under any provision of this charter, establishes conclusively that all of the terms and conditions of the Bareboat Charter Agreement are in effect.

d)     Charterer assumed full responsibility for the barges, their use and operation during charter period and shall have full and exclusive use, possession and control of the barges and shall pay all costs, charges and expenses of whatsoever nature, incident to the use operation and maintenance of the barges during the charter period.

e)     Charterer shall provide a safe berth including protection from mischief or vandalism for the barges.

f)     Charterer shall operate the barges so that the barges shall not be overloaded or operated in any manner inconsistent with prudent maritime practices.

g)     Charterer shall redeliver the barges in good condition as when delivered, clean and broom-swept, ordinary wear and tear excepted.

h)     If at the time of redelivery, the barges are damaged or otherwise in need of repair or other work to restore the barges to condition upon redelivery, Charterer

3

shall remain payable during such repairs and other work, the barges shall not be considered redelivered until the barges have been restored to said condition upon delivery, ordinary wear and tear excepted.

i)      Charterer shall be fully responsible for maintenance and repair of the barges and shall at all times use due diligence to maintain and preserve the barges in the same good order and condition as when delivered to Cherry Creek, the barges shall remain on charter until all maintenance and repairs have been performed.

j)      Cherry Creek shall procure and maintain at their own expense during the term of the Bareboat Charter Agreement hull and machinery insurance, including collision liability coverage, with an agreed value of $250,000.00 for the barges.

15.     In addition to the written Agreement, Cherry Creek directed Northstar to perform other services customarily the responsibility of the charterer, specifically, to assemble the barges, cover the deck of the barges with wood matting, locate a fuel tank on the barge deck, purchase a pump for the fuel tank and load and secure Cherry Creek's equipment on the assembled barges and deliver the flotilla to Indian River Inlet.

16.     On or about May 22, 2013, Northstar delivered to Cherry Creek the assembled and loaded 120' x 50' Shugart sectional barge as well as, anchors, anchor winches and power packs, all in good condition, as well as the requested equipment and supplies.

17.     Cherry Creek failed to relocate the Shugart barges prior to arrival of a coastal storm.

18.     During the coastal storm, the crane matting was washed off the decks when waves broke over the deck.

19.     During the coastal storm the Shugart barges broke loose and came upon the nearby rock jetties.

20.     The crane mats were never replaced by Cherry Creek; instead, Cherry Creek operated its heavy equipment directly on the steel deck of the Shugart barges causing significant damage to their steel decking and frames.

21.     The Shugart barges were picked up by Northstar severely damaged on or about July 26, 2013.

22.     The damaged Shugart barges have not been repaired by Cherry Creek as required by the Agreement.

23.     Charter hire for the Shugart barges continues to accrue, and will continue to accrue until repaired, in accordance with the terms of the Agreement at the charter hire rate of $29,400.00/month.

24.     On or about November 26, 2013 a Damage Report and video was provided to Cherry Creek, which reflected the off-hire condition of the Shugart barges.

25.      Four of the Shugart barges were damaged beyond repair and their replacement value is $100,000.00.

26.     Total cost to repair the damage to the remaining Shugart barges is $236,818.00.

27.     In addition to the physical damage to the Shugart barges, Northstar has suffered $150,000.00 in lost income from charter opportunities.

28.     Cherry Creek has also failed to pay the charter hire for the second month and the mobilization/demobilization cost, together totaling $115,897.00.

29.     Cherry Creek allowed the hull and machinery insurance on the Shugart barges to lapse during the charter without informing Northstar.

30.     In addition to the Shugart barges, Cherry Creek also entered into an oral agreement to charter three "Flexi-float" barges.

5

31.    The Flexi-Float barges were delivered to Cherry Creek at Indian River Inlet on or about June 17, 2013.

32.    The Flexi-float barges also broke free from the Shugart barges while under the exclusive care custody and control of Cherry Creek and one barge sustained $14,000.00 in physical damage.

33.    The Flexi-float barges were towed back to Cape May, NJ on July 29, 2013.

34.    The damaged Flexi-float barge has not yet been repaired by Cherry Creek.

35.    Charter hire on the one Flexi-float barge continues to accrue at the rate of hire of $1,933.33/month.

36.    The payment terms agreed to by Cherry Creek provide that billing would be monthly, and a 1.5 % finance charge would accrue after 30 days for each month in which a balance was unpaid, said finance charge continues to accrue.

37.    Despite demand, Cherry Creek has refused to pay its outstanding charter balance or to affect repairs to the damaged barges.

## COUNT I (BREACH OF CONTRACT)
## NORTHSTAR MARINE INC. v. CHERRY CREEK RECYCLING LLC

38.    Plaintiff hereby incorporates by reference Paragraphs 1-37 of the Complaint as if set forth fully herein.

39.    Cherry Creek entered into an Agreement with Northstar whereby Northstar agreed to provide to Cherry Creek the 120' x 50' Shugart barge assembly with wood covered decking, anchors, anchor winches, power pack, and to load and mobilize certain materials and equipment requested by Cherry Creek to Indian River Inlet.

40.     On or about May 22, 2013, Northstar delivered to Cherry Creek, at Indian River Inlet, the 120' x 50' Shugart barge assembly with wood covered decking, anchors, anchor winches, power pack and certain other materials and equipment in good condition.

41.     On or about June 17, 2013, Northstar also delivered to Cherry Creek at Indian River Inlet three Flexi-float barges.

42.     Cherry Creek breached the terms of the Bareboat Charter agreement in that:

a)     Cherry Creek failed to provide a safe berth for the barges during the term of the charter period which resulted in the barges breaking loose from their mooring and striking a nearby jetty during a coastal storm which resulted in damage to the barges.

b)     Cherry Creek failed to utilize the barges in a manner consistent with prudent maritime practices and due diligence to maintain and preserve the barges in the same good order and condition as when delivered.

c)     Cherry Creek allowed their heavy equipment to be operated directly on the steel deck of the Shugart barges which resulted in significant damage to the barges' decking and frames.

d)     Cherry Creek failed to make any repairs to the damage caused by their actions and failed to redeliver the barges in good condition as when delivered to Cherry Creek by Northstar.

e)     Cherry Creek failed to maintain hull and machinery insurance during the terms of the Bareboat Charter Agreement.

f)     Cherry Creek has failed to pay its outstanding charter balance

g)     Cherry Creek has failed to repair the damage to the Shugart and Flexi-float barges.

43.     As a result of the foregoing, Cherry Creek has breached its Agreement with Northstar.

44.     As a direct and proximate result of said breach, Northstar has suffered damages in the amount of $863,315.00, and will continue to suffer damages and lost income.

WHEREFORE, Plaintiff, Northstar Marine, Inc., demands judgment in its favor and against Cherry Creek Recycling LLC, together with, costs attorney's fees, pre-judgment and post-judgment interest, continued accrual of charter hire and such other and further relief as may be appropriate under the circumstances.

## COUNT II (DETRIMENTAL RELIANCE)
## NORTHSTAR MARINE INC. v. CHERRY CREEK RECYCLING LLC

45.     Plaintiff hereby incorporates by reference Paragraphs 1 through 44 of the Complaint as if set forth fully herein.

46.     Cherry Creek promised to care for, maintain, and repair any damage suffered to Northstar's barges while said barges were in the care custody and control of Cherry Creek.

47.     Cherry Creek promised to pay Northstar for the mobilization/demobilization and use of the barges Northstar provided under their Agreement.

48.     Northstar relied upon the promises of Cherry Creek in entering into the Agreement.

49.     Cherry Creek's promise to pay the cost of mobilization/demobilization, use and to care for, maintain, repair the barges induced Northstar to enter into the Agreement.

50. Cherry Creek has failed to pay charter hire, mobilization/demobilization costs, or the care for, maintain, or repair the damage suffered to Northstar's barges while in Cherry Creek's care custody and control, despite demand.

51. As a direct and proximate result of said reliance, Northstar has suffered damages in the amount of $863,315.00, and will continue to suffer damages and lost income.

WHEREFORE, Plaintiff, Northstar Marine, Inc., demands judgment in its favor and against Cherry Creek Recycling LLC, together with, costs attorney's fees, pre-judgment and post-judgment interest and such other and further relief as may be appropriate under the circumstances.

## COUNT III (BAILMENT)
## NORTHSTAR MARINE INC. v. CHERRY CREEK RECYCLING LLC

52. Plaintiff hereby incorporates by reference paragraphs 1 through 51 of its Complaint as if set forth fully herein.

53. Northstar and Cherry Creek entered into an Agreement whereby Northstar entrusted Cherry Creek with the exclusive care custody and control of its barges.

54. Cherry Creek agreed to redeliver the barges to Northstar in as good condition as when delivered, clean and broom-swept, ordinary wear and tear excepted.

55. Northstar delivered the barges to Cherry Creek in good condition.

56. Cherry Creek thereafter had exclusive use, possession and control of the barges during the charter period.

57. The barges were damaged while in the care custody and control of Cherry Creek.

58. Cherry Creek has refused to return the barges to the condition upon delivery and as such breached its contractual and fiduciary duties owed to Northstar through the Bareboat Charter Agreement.

59.     As a direct and proximate result of said breach Cherry Creek, is liable for the damage which occurred to the barges while in their exclusive care, custody and control.

60.     As a result of said breach, Northstar suffered damages in the amount of $863,315.00, and will continue to suffer damages and lost income.

WHEREFORE, Plaintiff, Northstar Marine, Inc., demands judgment in its favor and against Cherry Creek Recycling LLC, together with, costs attorney's fees, pre and post judgment interest and such other and further relief as may be appropriate under the circumstances.

## COUNT IV (QUANTUM MERUIT)
## NORTHSTAR MARINE INC. v. GEORGE & LYNCH, INC.

61.     Plaintiff hereby incorporates by reference paragraphs 1 through 60 of its Complaint as if set forth fully herein.

62.     Cherry Creek, utilizing the barges of Northstar, provided a service to George & Lynch, specifically the demolition of the old Indian River Inlet Bridge.

63.     George & Lynch has received the benefit from Northstar's provision of barges, mobilization and demobilization of the barges to Indian River Inlet and the provision of various other equipment and services.

64.     Northstar provided the barges and other services in good faith and expected payment under its agreement with Cherry Creek.

65.     George & Lynch accepted the services provided by Northstar via Cherry Creek.

66.     Upon information and belief, George & Lynch has been paid by its client for the work performed by Cherry Creek.

67.     Upon information and belief, George & Lynch has withheld payment to Cherry Creek.

10

68.     George & Lynch has been unjustly enriched by its receipt and acceptance of a benefit provided by Northstar and its retention of the compensation it received for those services.

69.     As a result, Northstar has suffered damages, and continues to suffer damages.

WHEREFORE, Plaintiff, Northstar Marine, Inc., demands judgment in its favor and against Cherry Creek Recycling LLC, together with, costs attorney's fees, pre and post judgment interest and such other and further relief as may be appropriate under the circumstances.

REEVES McEWING, LLP


BY: /s/Brian McEwing, Esquire
        Brian McEwing, Esquire
        681 Town Bank Rd.
        Cape May, NJ 08204
        (609) 846-4717
        Attorney ID 011612008
        Attorney for Plaintiff, Northstar Marine, Inc.

Date:  June 12, 2014

11